UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
RODNEY BRADSHAW,                          )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      Civil Action No. 04-1422 (PLF)
                                          )
TOM VILSACK, Secretary,                   )
United States Department of Agriculture,  )
                                          )
and                                       )
                                          )
JOE LEONARD, JR., Assistant Secretary for )
Civil Rights, United States Department of )
Agriculture,                              )
                                          )
            Defendants.[1]                )
                                          )
_____ )


OPINION


            This matter is before the Court on the defendants' motion for sanctions against the

plaintiff, Rodney Bradshaw, along with their motion to strike the plaintiff's memorandum in

opposition to the defendants' motion for sanctions.  The defendants seek dismissal of this case

(or, in the alternative, other severe sanctions) due to the plaintiff's failure to obey a discovery

order, along with other conduct by the plaintiff that the defendants contend has protracted this

action and forced them to expend time and resources.  The defendants also maintain that the

_____

      [1]      Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Tom Vilsack is
substituted for former Secretary of Agriculture Michael Johanns, and Joe Leonard, Jr., is
substituted for former USDA Assistant Secretary for Civil Rights Vernon Parker.  Mr. Parker
was originally named as a defendant in both his individual and official capacities, but the
plaintiff has never targeted any particular action by Mr. Parker and the current complaint does
not state that he is being sued individually.  See Second Amended Complaint [Dkt. No. 34-2].
Accordingly, Vernon Parker will be dismissed as a defendant in this case.

plaintiff's memorandum opposing their motion for sanctions impermissibly discloses matters discussed during mediation, in violation of the local rules of this Court.  Upon consideration of the parties' submissions, the relevant legal authorities, and the entire record in this case, the Court will strike the plaintiff's opposition memorandum from the record and will grant in part and deny in part the defendants' motion for sanctions.[2]

## I.  BACKGROUND

Plaintiff Rodney Bradshaw brought this action against the defendants under the Equal Credit Opportunity Act of 1972 ("ECOA"), 15 U.S.C. § 1691, claiming that he has been discriminated against because of his race.  See Second Amended Complaint [Dkt. No. 34-2]. The plaintiff originally was represented in this action by attorney James W. Myart, Jr., who was counsel for Mr. Bradshaw until January 2008, after Mr. Myart's application to renew his membership in the bar of this Court was rejected.

The defendants served their first set of interrogatories and requests for production on the plaintiff in July 2006, in accordance with the Court's Scheduling Order.  Mem. at 2.  The plaintiff did not respond within the thirty-day deadline established by the Scheduling Order, and only after being reminded by the defendants of this missed deadline did he supply his responses, eleven days late.  Id. at 2-3.  The defendants found the plaintiff's responses to the discovery requests to be inadequate: many of the interrogatory responses were blank, incomplete, or non-responsive (without the plaintiff having offered any objections to the queries), and the plaintiff's

_____

[2]       The papers filed in connection with this matter include: defendants' motion for dismissal or other sanctions ("Mot. Sanctions") and supporting memorandum ("Mem.") [Dkt. No. 116]; plaintiff's opposition ("Opp.") [Dkt. No. 118]; defendants' reply ("Reply") [Dkt. No. 120]; and defendants' motion to strike plaintiff's opposition ("Mot. Strike") [Dkt. No. 119].

responses to the requests for production contained hundreds of documents without any indication

of which documents related to which request.  Id. at 3-4.  The defendants promptly sent a letter to

plaintiff's counsel detailing the deficiencies in the plaintiff's responses, and offering the plaintiff

additional time to supplement them.  That time came and went without the plaintiff furnishing

the requested materials or responding to the defendants' attempts to confer telephonically with

his counsel about the matter.  Id. at 4; see id., Exhs. 1-7.

    Having received nothing from the plaintiff, and being unwilling to allow more

time for compliance in view of the plaintiff's non-responsiveness, the defendants filed an

expedited request for a teleconference to discuss the impasse.  See Docket No. 54.  This case

subsequently was referred to Magistrate Judge John Facciola for the management of discovery.

See Referral Order (Oct. 11, 2006).  After receiving submissions from the parties and conducting

proceedings in early December of 2006, Magistrate Judge Facciola issued an Order on December

22, 2006, directing plaintiff's counsel, by January 5, 2007, to supplement his deficient

interrogatory responses and to correlate each document he had provided in response to the

defendants' production requests with the appropriate request.  Order ¶¶ 3-4, 7 (Dec. 22, 2006).

    The January 5 deadline passed, once again, with nothing forthcoming from the

plaintiff.  After an additional week went by with still no word from the plaintiff, the defendants

filed a motion for sanctions.  See Docket No. 60.  Plaintiff's counsel obtained two extensions of

time in which to respond to this motion.  See Minute Order (Jan. 23, 2007); Minute Order (Feb.

2, 2007).  He then sought a third extension, which — for the first time — also requested an

extension of time in which to supply his still-outstanding discovery responses.  See Docket No.

64. Magistrate Judge Facciola granted this motion and set February 23, 2007, as the deadline for delivery of the plaintiff's supplemental discovery responses. See Minute Order (Feb. 16, 2007).

Late in the day on February 22, 2007, plaintiff's attorney, Mr. Myart, attempted but failed to ship the outstanding discovery materials to the defendants via overnight shipping. Although Mr. Myart faxed the plaintiff's supplemental interrogatory responses to the defendants on that date, the remainder of the discovery materials was not shipped until February 23. Because these materials would not reach the defendants by the court-ordered deadline — that same day — Mr. Myart filed an "emergency motion" to further enlarge the time in which to deliver discovery to the defendants. See Docket No. 65. The materials ultimately arrived on February 26, and on February 27 the Magistrate Judge issued a Minute Order granting the plaintiff's emergency motion *nunc pro tunc*. A separate Minute Order issued that same day observed that the plaintiff now appeared to have complied with the Court's discovery deadlines. Minute Order (Feb. 27, 2007).

Briefing continued on the defendants' motion for sanctions, however, and in a September 2007 opinion Magistrate Judge Facciola vacated his extension of the January 5, 2007 deadline by which the plaintiff was supposed to have supplied his supplemental discovery materials. Judge Facciola explained that because the plaintiff did not request an extension until after the deadline had already passed, under the Federal Rules of Civil Procedure his request "had to be accompanied by a motion establishing that the failure to act in accordance with the deadlines was 'the result of excusable neglect.'" Memorandum Opinion at 3 (Sept. 11, 2007) (quoting Fed. R. Civ. P. 6(b)). The Magistrate Judge ruled that for the plaintiff to be considered in compliance with the December 2006 discovery order, he would need to submit a motion for

4

leave to file that established "excusable neglect" for the missed deadline.  Id. at 4.  The plaintiff

was given a deadline of October 1, 2007, for any such motion.  In the meantime, Judge Facciola

denied without prejudice the defendants' motion for sanctions.  Id.

At this point in the case, a series of extensions and stays ensued, driven at first by

motions for continuances filed by Mr. Myart in which he claimed that medical incapacitation

temporarily prevented him from continuing with the case.  See, e.g., Docket Nos. 75, 84.

Magistrate Judge Facciola ultimately extended the deadline for the plaintiff's motion for leave to

file until early December 2007.  See Minute Order (Nov. 13, 2007).  The plaintiff through

counsel sought to extend this new deadline, again based on considerations relating solely to Mr.

Myart.  See Docket No. 92.  By the time of this request, however, Mr. Myart's application to

renew his membership in the bar of this Court had been denied.[3]  The Magistrate Judge therefore

extended the deadline for the plaintiff's motion to February 22, 2008, "so as to provide [the

---

[3]      In October 2007, in another case against the Agriculture Department brought by
Mr. Myart on behalf of a client, Judge Kollar-Kotelly noted Mr. Myart's misrepresentations to
the Court, the judicial inquiries concerning him in his home state of Texas, the denial of his
petition to proceed pro hac vice in Nevada, and his indictment for perjury in Texas.  See
Williams v. Johanns, 518 F. Supp. 2d 205, 209 & n.3 (D.D.C. 2007).  She noted that these
matters "raise a question as to whether he should be permitted to continue practicing as a
member of this Court."  See id. at n.3.  On January 2, 2008, Judge Kollar-Kotelly held Mr. Myart
in civil contempt of this Court for violating Magistrate Judge Facciola's confidentiality order in
the Williams case.  See Williams v. Johanns, 529 F. Supp. 2d 22, 23-24 (D.D.C. 2008); Order,
Williams v. Johanns, Civil Action No. 03-2245 (Jan. 2, 2008) [Dkt. No. 197].  She entered a
separate order that same day prohibiting Mr. Myart from submitting any additional filings in the
Williams case because the Attorney Admissions Review Committee of this Court had rejected
Mr. Myart's application to renew his membership in the bar of this Court and because Mr. Myart
had been provisionally removed from the list of members in good standing.  See Order, Williams
v. Johanns, Civil Action No. 03-2245 (Jan. 2, 2008) [Dkt. No. 196].  Furthermore, even before
Judge Kollar-Kotelly's decisions, the undersigned had found it necessary to order stricken from
the record filings submitted by Mr. Myart because they were scandalous and derogatory.  See
Hildebrandt v. Veneman, 233 F.R.D. 183, 184 (D.D.C. 2005); Pigford v. Veneman, 225 F.R.D.
54, 58 (D.D.C. 2005).

plaintiff] with an opportunity to obtain new counsel[.]" Memorandum Order at 2 (Jan. 11, 2008).

The plaintiff was advised that his failure to comply with this deadline might result in the

dismissal of his case.  <u>Id</u>.  At the Court's direction, a copy of this Memorandum Order was

mailed directly to the plaintiff.

        Some months later, replacement counsel was appointed for plaintiff, exclusively

for the purpose of mediation, <u>see</u> Order (July 2, 2008), which ultimately proved unsuccessful.

With respect to other matters, the plaintiff was unable to find replacement counsel; as a result, he

notified the Court on April 21, 2008 that he was electing to continue *pro se*.  <u>See</u> Docket Nos. 99,

101, 102 (letters from plaintiff to the Court).  Proceeding on his own, the plaintiff sought and

obtained a further extension of the deadline for his motion establishing excusable neglect.  <u>See</u>

Minute Order (Mar. 28, 2008).  Instead of filing a motion, however, the plaintiff sent a notice

informing the Court that he wished to adopt the position taken by the plaintiffs in the related case

of  <u>Hildebrandt v. Johanns</u>, Civil Action No. 04-1423, where the plaintiffs had been ordered to

file the same type of motion in response to the same events.  <u>See</u> Docket No. 105.[4]  In September

2008, the Magistrate Judge in <u>Hildebrandt</u> concluded that the plaintiffs' submission failed to

establish excusable neglect or even attempt to do so.  <u>See</u> Memorandum Order, <u>Hildebrandt v.</u>

<u>Veneman</u>, Civil Action No. 04-1423 (D.D.C. Sept. 24, 2008).  It is not clear whether the plaintiff

in this case ever received notice that the Magistrate Judge in <u>Hildebrandt</u> had rejected the motion

that he sought to adopt here.  In any event, the plaintiff submitted nothing further to the Court on

this matter.

---

[4]      The plaintiffs in that case had also been represented by Mr. Myart.

Three months later, upon expiration of the final deadline given to the plaintiff for his motion, the Magistrate Judge issued a Memorandum Order declaring that the plaintiff had failed to comply with the December 2006 discovery order, because he had not established excusable neglect for his lack of compliance with that order.  Memorandum Order at 2 (Dec. 11, 2008).  The Magistrate Judge also granted the defendants leave to re-file their motion for sanctions.  Id. at 3.  The defendants subsequently renewed their motion, and the plaintiff filed a *pro se* opposition, to which the defendants replied.  The defendants also moved to strike the plaintiff's opposition.

## II.  DISCUSSION

### A.  Motion to Strike

The defendants have moved to strike the plaintiff's opposition to their motion for sanctions on the ground that it includes characterizations of statements made during court-ordered mediation sessions and related settlement discussions between the parties, in violation of the local rules of this Court.  Local Civil Rule 84.9 states:  "The Court hereby prohibits . . . all counsel and parties . . . from disclosing any written or oral communications made in connection with or during any mediation session."  LCvR 84.9(a)(1); see Memorandum Opinion and Order, Gard v. U.S. Dep't of Educ., Civil Action No. 00-1096 (D.D.C. Nov. 9, 2007) (striking status report under Local Civil Rule 84.9 because it revealed dollar amounts of settlement offers along with other information from settlement negotiations).  The defendants are correct: the plaintiff's opposition describes mediation discussions between the parties and alleges that a settlement

agreement was reached and breached.  These disclosures clearly violate Local Civil Rule

84.9(a)(1), and the opposition memorandum will be stricken from the record.

### B. Motion for Sanctions

#### 1.  Dismissal

The defendants have moved for dismissal or, in the alternative, for lesser

sanctions, based on the plaintiff's failure to obey the December 22, 2006 discovery order.  Mot.

Sanctions at 1.  The Magistrate Judge has ruled that the plaintiff failed to comply with that Order.

Memorandum Order at 2 (Dec. 11, 2008).  Because sanctions may be imposed for failure to obey

a discovery order, Fed. R. Civ. P. 37(b)(2)(A), the issue is whether and what sanctions should be

applied.

Courts may impose a range of sanctions, including dismissal, where a party fails

to comply with a discovery order.  See Fed. R. Civ. P. 37(b)(2)(A), 41(b).  But "the central

requirement" of a Rule 37 sanction is that it be "just."  Arias v. Dyncorp Aero. Operations, LLC,

677 F. Supp. 2d 330, 332 (D.D.C. 2010) (citing Bonds v. District of Columbia, 93 F.3d 801, 808

(D.C. Cir. 1996)).  Our circuit has provided guidance on determining when the extreme sanction

of dismissal is justified.  See Webb v. Dist. of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998).

Under Webb, dismissal is warranted when (1) the other party has been "so prejudiced by the

misconduct that it would be unfair to require [the party] to proceed further in the case," (2) the

party's misconduct has put "an intolerable burden" on the court by requiring the court to modify

its own docket and operations in order to accommodate the delay, *or* (3) the court finds it

necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in

the future."  Id. at 971; see Young v. Office of U.S. Senate Sergeant at Arms, 217 F.R.D. 61,

65-66 (D.D.C. 2003).  These guidelines apply not only to dismissal but to any other "severe"

sanction, which means a sanction that is "litigation-ending" because it denies a party the right to

a trial on the merits.  Bonds v. District of Columbia, 93 F.3d at 808-09; see Klayman v. Judicial

Watch, Inc., 802 F. Supp. 2d 137, 151 (D.D.C. 2011) (characterizing as a "severe sanction" a

proposed order that "will effectively prevent [the plaintiff] from carrying his burden of proof on

his claims, thereby almost certainly requiring dismissal").  Before imposing a severe sanction, "a

district court must 'consider whether lesser sanctions would be more appropriate for the

particular violation' because the judicial system favors disposition of cases on the merits."

Moore v. Napolitano, 723 F. Supp. 2d 167, 179 (D.D.C. 2010) (quoting Bonds v. District of

Columbia, 93 F.3d at 808).  "'[D]ismissal is a sanction of last resort to be applied only after less

dire alternatives have been explored without success' or would obviously prove futile."  Bonds v.

District of Columbia, 93 F.3d at 808 (quoting Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1075

(D.C. Cir. 1986)).[5]

a. Prejudice to Defendants

        In determining whether a party's misconduct prejudices the other party so severely

as to make it unfair to require the other party to proceed with the case, courts look to whether the

aggrieved party has cited specific facts demonstrating actual prejudice, such as the loss of key

---

[5]        The defendants argue that dismissal also is warranted under Rule 41(b) for failure
to prosecute, because the plaintiff has not sought any discovery, without which he cannot prevail
on his claim.  Mem. at 14-16.  The same factors are relevant to determining whether dismissal is
appropriate for failure to prosecute and failure to obey a discovery order.  Compare Webb v.
District of Columbia, 146 F.3d at 971, with Allen v. United States, 277 F.R.D. 221, 223 (D.D.C.
2011).

witnesses.  <u>Shea v. Donohoe Constr. Co.</u>, 795 F.2d at 1074; <u>see</u> <u>id</u>. at 1075 (noting that dismissal

has been upheld where "the errant behavior has caused the other party severe prejudice in his

ability to present his case").  Even where a factual showing of actual prejudice has not been

made, prejudice may be presumed where there has been "unreasonable delay."  <u>Id</u>. (citing <u>Lyell</u>

<u>Theatre Corp. v. Loews Corp.</u>, 682 F.2d 37, 43 (2d Cir. 1982)).

   The defendants maintain that they have experienced severe prejudice resulting

from the plaintiff's noncompliance with his discovery obligations because they are unable to

proceed with discovery, formulate an effective defense, move for summary judgment (if

warranted), or prepare for trial.  Mem. at 12.  The defendants also aver that the plaintiff's conduct

has forced them to waste time and money.  <u>Id</u>.  While these are legitimate grievances, they do not

demonstrate that the plaintiff's behavior has prejudiced the defendants' ability to present their

case, <u>Shea v. Donohoe Constr. Co.</u>, 795 F.2d at 1075, but merely that the defendants have been

unable to move forward toward dispositive briefing or trial because of the plaintiff's delay.  This,

however, will happen nearly every time that a plaintiff's violation of a court order delays

proceedings during the discovery phase.  Such contentions do not speak to actual prejudice.  In

any event, the contentions made here are not the kind of specific, factually supported allegations

required to find such prejudice.  Cf. <u>Dubicz v. Commonwealth Edison Co.</u>, 377 F.3d 787, 792-93

(7th Cir. 2004) (declining to find prejudice, in context of motion for leave to amend complaint,

where defendant's "case for prejudice is stated . . . only in the most conclusory of terms" and no

"particular witnesses or documents are identified").  Moreover, "the fact that the other party has

incurred costs due to the malfeasance will not ordinarily be enough to warrant dismissal[.]"  <u>Shea</u>

v. Donohoe Constr. Co., 795 F.2d at 1075.  Actual prejudice to the defendants' case has not been demonstrated.

   Dismissal is also justified where "unreasonable delay" by the plaintiff warrants a presumption of prejudice.  Shea v. Donohoe Constr. Co., 795 F.2d at 1075.  While the plaintiff in this case has caused a great deal of delay, some of it resulted from legitimately obtained extensions of time in which to comply with deadlines.  But the root cause of most of the delay was the atrocious behavior of Mr. Myart, who no longer represents the plaintiff and has been barred from practicing in this Court.  See supra at 5, n.3.  It was Mr. Myart whose unprofessional flouting of his obligations as counsel originally led the Court to establish the discovery deadline set forth in the December 2006 Order.  And it was Mr. Myart who then ignored that deadline, putting the plaintiff in the difficult position, as a *pro se* litigant, of crafting a motion that would establish "excusable neglect" under Rule 6(b) for Mr. Myart's conduct.  Because Mr. Myart, the true transgressor, is no longer involved in this case, the Court is not persuaded that "less dire alternatives" to dismissal would "obviously prove futile" as a sanction for the plaintiff's noncompliance with the discovery order.  Bonds v. District of Columbia, 93 F.3d at 808.

   b.  Prejudice to the Judicial System

   Severe sanctions, including dismissal, may be warranted where a party's misconduct places "an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay."  Webb v. Dist. of Columbia, 146 F.3d at 971 (quoting Shea v. Donohoe Constr. Co., 795 F.2d at 1075).  Dismissal may be an appropriate exercise of discretion "[w]here the delay or misconduct would require the court to

11

expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases." Shea v. Donohoe Const. Co., 795 F.2d at 1075-76 (emphasis in original).  District courts have substantial discretion in determining whether it would be overly burdensome to take remedial action less drastic than outright dismissal.  Id. at 1076.

While the fallout from the plaintiff's violation of the December 2006 discovery order has necessitated a significant expenditure of judicial resources, the Court does not find such grave prejudice to the judicial system as a result of the violation as to warrant dismissal. And as noted above, the Court presently is not convinced that less dire sanctions would be futile. The Court therefore will not dismiss the plaintiff's case based on prejudice to the judicial system.

c.  Deterrence

The Court's legitimate interest in imposing a sanction is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." DL v. Dist. of Columbia, 274 F.R.D. 320, 325 (D.D.C. 2011) (quoting Bonds v. District of Columbia, 93 F.3d at 808). Sanctions based on principles of deterrence, however, "call for careful evaluation to ensure that the proper individuals are being sanctioned (or deterred) and that the sanctions or deterrent measures are not overly harsh." Bonds v. Dist. of Columbia, 93 F.3d at 808 (quoting Shea v. Donohoe Constr. Co., 795 F.2d at 1077).  A discovery sanction imposed for its deterrent effect "must be calibrated to the gravity of the misconduct," and courts should avoid "'pointless exaction[s] of retribution[.]'" Id. (quoting Jackson v. Washington Monthly Co., 569 F.2d 119,

123 (D.C. Cir. 1977)). "The choice of sanction should be guided by the concept of proportionality between offense and sanction." DL v. Dist. of Columbia, 274 F.R.D. at 325 (quoting Bonds v. District of Columbia, 93 F.3d at 808).

Where attorney misconduct is involved, as it is here, our circuit "has been notably reluctant to affirm dismissal under the punishment or deterrence rationale unless the client himself is shown to deserve the sanction." Shea v. Donohoe Const. Co., 795 F.2d at 1077. "When the client's only fault is his poor choice of counsel, dismissal of the action has been deemed a disproportionate sanction," and the district court "should first attempt to sanction the attorney at fault." Id. (citing Jackson v. Washington Monthly Co., 569 F.2d at 123 & n.24, and Butler v. Pearson, 636 F.2d 526, 531 (D.C. Cir. 1980)). "Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system." Jackson v. Washington Monthly Co., 569 F.2d at 123.

Furthermore, dismissal is appropriate as a deterrent measure only when the client is aware of the attorney's misconduct. B.R. ex rel. Rempson v. Dist. of Columbia, 262 F.R.D. 11, 15 (D.D.C. 2009) (citing Shea v. Donohoe Const. Co., 795 F.2d at 1077-78). "Concerned that a client might be unaware of the attorney's misconduct, this circuit requires a district court to notify the client before dismissing a case pursuant to the deterrence rationale." Id.; accord Capital Yacht Club v. Vessel Aviva, 646 F. Supp. 2d 156, 157 (D.D.C. 2009); see Shea v. Donohoe Const. Co., 795 F.2d at 1078 ("We look disfavorably upon dismissals as sanctions for attorney misconduct or delay *unless the client himself has been made aware of the problem, usually through notice from the trial court.* We advise strongly the district courts themselves directly notify the *client* when attorney misconduct has occurred to a degree that the court is

13

contemplating dismissal if a recurrence occurs.") (emphasis in original).  Only if a client, after

receiving such notification, does not seek new counsel and the errant conduct of the attorney

continues are severe sanctions warranted.  Shea v. Donohoe Constr. Co., 795 F.2d at 1077-78.[6]

Here, the plaintiff was not individually warned that Mr. Myart's failure to meet

the January 5, 2007 discovery deadline might lead to dismissal.  It is not clear that the plaintiff

had any knowledge of Mr. Myart's misconduct until after Mr. Myart was no longer "a member in

good standing with the Court."  Plaintiff's *Pro Se* Letter to the Court (Feb. 15, 2008) [Dkt. No.

99].  While the defendants maintain that the plaintiff shares culpability because he "signed

interrogatory responses that were nonsensical, evasive, incomplete, and in some instance blank,"

Mem. at 13-14, his signing of such interrogatories does not warrant dismissing the plaintiff's

case.  The defendants here are referring to the plaintiff's *first* set of interrogatory responses, and

it is the failure by Mr. Myart to supplement those responses that is the basis for the defendants'

motion.  The Court cannot justify dismissing the case based on misconduct by Mr. Myart about

which the plaintiff did not know and was not individually warned by the Court, as required under

Shea v. Donohoe Const. Co..[7]

---

[6]     The defendants' reliance on Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962),
and Pigford v. Veneman, 292 F.3d 918, 925-27 (D.C. Cir. 2002), for the proposition that
dismissal can be an appropriate sanction for the misconduct of an attorney, is misplaced in light
of the more specific guidance that our circuit has provided about when dismissal, as opposed to a
lesser sanction, should be imposed for failure to obey a court order.

[7]     The plaintiff *was* individually warned, *after* Mr. Myart's exit from the case, that
he needed to file a motion establishing excusable neglect for missing the discovery deadline, and
that failure to do so might result in dismissal of his case.  Memorandum Order at 2 (Jan. 11,
2008).  As explained above, the plaintiff did not ignore this order: he attempted to satisfy it by
adopting a motion from the related Hildebrandt case, which the Magistrate Judge later
determined did not establish excusable neglect.

Neither <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639 (1976), nor <u>Capitol Chem. Indus., Inc. v. Cmty. Mgmt. Corp.</u>, 887 F.2d 332 (D.C. Cir. 1989) (per curiam) (unpublished) — both cited by the defendants — persuade the Court otherwise.  In <u>Nat'l Hockey League</u>, the plaintiffs failed to comply with an order after seventeen months of delay and "several admonitions by the Court," including warnings to the plaintiffs "that their failure to provide certain information could result in the imposition of sanctions."  <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. at 640-41.  In <u>Capitol Chem. Indus., Inc.</u>, the plaintiff completely failed to respond to interrogatories or seek any extensions, "totally disregard[ing] successive court orders instructing responses to [the defendant's] discovery requests."  <u>Capitol Chem. Indus., Inc. v. Cmty. Mgmt. Corp.</u>, 887 F.2d at *2.  And in these opinions, the Supreme Court and the D.C. Circuit merely concluded that the district court did not abuse its discretion by dismissing the case under the circumstances presented — not that dismissal is mandatory in similar circumstances.  <u>Id.</u>; <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. at 642. While deterrence of conduct such as that engaged in by Mr. Myart is important, the Court does not find dismissal an equitable means of achieving that deterrence, without significant culpability by the plaintiff himself.

2.  Other Sanctions

Having concluded that the severe sanction of dismissal is not warranted, the Court now considers whether any of the lesser sanctions suggested by the defendants are appropriate.

The defendants have requested that, as an alternative to dismissal, the Court (1) compel complete and responsive answers to certain outstanding interrogatories; (2) strike

15

paragraph 24 of the second amended complaint; (3) preclude the plaintiff from seeking from defendants or otherwise offering any evidence regarding similarly situated white farmers who applied for loans from the USDA; (4) preclude the plaintiff from offering any evidence of injuries resulting from his ECOA claim; (5) preclude the plaintiff from offering in evidence any documents other than those he has produced thus far in response to defendants' requests for production; (6) preclude the plaintiff from calling any witnesses other than those listed in his response to Interrogatory No. 20; (7) compel the plaintiff to correlate the documents previously produced with the defendants' specific requests for production to which they are responsive; (8) compel the plaintiff to correlate his interrogatory responses with the interrogatories to which they are responsive; and (9) preclude any discovery requests by the plaintiff. Mem. at 16-17.

Because the Court has concluded that dismissal is not justified, any alternative sanctions ordered in lieu of dismissal must not effectively amount to a default judgment. See Bonds v. District of Columbia, 93 F.3d at 808-09; Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d at 151; Moore v. Napolitano, 723 F. Supp. 2d at 179. The defendants' third, fourth, and ninth requests would have precisely that impact. As the defendants themselves recognize, imposing these sanctions would effectively prevent the plaintiff from prevailing on his ECOA claim or proving damages. See Mem. at 15 ("Instrumental to prevailing on [his claim] of racial discrimination in violation of ECOA is a showing that [the plaintiff was] treated less favorably than similarly situated white farmers seeking loans from defendants."). The Court therefore will not grant the defendants' request for these sanctions.

The Court also does not deem it appropriate to grant the defendants' fifth or sixth requests, which seek to preclude the plaintiff from offering in evidence any documents other than

those he has produced thus far in discovery, and from calling as a witness any person other than those listed in his response to Interrogatory No. 20. The interrogatory and production responses to which the defendants here refer were made while the plaintiff was still being represented by Mr. Myart. Just as the Court does not find dismissal of the plaintiff's case a proportionate sanction for Mr. Myart's misconduct, it does not find it equitable to inexorably bind the plaintiff to responses supplied in his first set of interrogatories, which were prepared under the auspices of Mr. Myart.

As for the defendants' second request — to strike paragraph 24 of the plaintiff's second amended complaint — the defendants do not explain why this particular paragraph should be stricken or why doing so would be an appropriate sanction: instead, they merely cite the plaintiff's response to an interrogatory but provide no further information. See Mem. at 16. The Court therefore will not grant this request.

This leaves the defendants' first, seventh, and eighth requests, all of which seek to compel the plaintiff to adequately and properly respond to the defendants' interrogatories and production requests. The Court agrees that if the plaintiff wishes to proceed with this case he must forthwith comply with all outstanding discovery obligations. But the Court will leave it to Magistrate Judge Facciola, to whom pretrial matters have been referred and who has examined the plaintiff's discovery responses, to determine which of the plaintiff's discovery obligations are still outstanding and to issue appropriate orders.

Finally, apart from the proposed sanctions described above, the defendants request an award of attorneys' fees and expenses associated with the filing of their motion for sanctions. Where a party has failed to comply with an order, regardless of whether other sanctions have

been imposed, "the court must order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(b)(2)(C).  In the circumstances of this case, imposing a monetary penalty on

this now *pro se* plaintiff for the misdeeds of his attorney would be unjust.  Monetary sanctions

against Mr. Myart, on the other hand, are firmly justified by the cost, inconvenience, and

difficulty that his professional misconduct has imposed on the defendants, the Court, and his own

former client.  See Shea v. Donohoe Constr. Co., 795 F.2d at 1075 (noting that "the court may

order the guilty counsel to pay a designated amount to the other party to cover his costs and

inconvenience" and that the costs incurred by the defendant "can be adequately compensated by

requiring Shea's attorneys to pay those fees, or any other amount that the District Court

determines to be just compensation").  Whether the defendants wish to pursue Mr. Myart for

attorneys' fees and expenses is a matter the defendants will have to determine.  If they decide to

do so, they may file a separate fees petition with supporting documentation and affidavits.


III.  CONCLUSION

   For the reasons explained above, the Court has concluded that an order that the

plaintiff comply with all outstanding discovery obligations is the appropriate sanction for the

plaintiff's violation of the Court's discovery order.  The defendants may also pursue monetary

sanctions against Mr. Myart if they wish to undertake that effort.

   That having been said, the Court needs to be assured that the plaintiff is still able

and willing to prosecute the action.  After Mr. Myart's departure from the case, the plaintiff was

unable to obtain replacement counsel.  Proceeding on his own, he proved unable to craft and submit the type of motion he was directed by the Magistrate Judge to file, establishing excusable neglect for his discovery noncompliance.  In view of these considerations, the Court will direct the plaintiff to notify the Court in writing of his willingness and ability to prosecute this action, including his ability to comply with discovery obligations and other requirements of the litigation process.  The plaintiff also is cautioned that in view of the considerable time and expense already incurred by the defendants, all future litigation deadlines will be strictly enforced.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
DATE:   November 6, 2012                     United States District Judge