UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RODNEY BRADSHAW,                    )
                                    )
            Plaintiff,              )
                                    )
        v.                          )  Civil Action No. 04-1422 (PLF)
                                    )
TOM VILSACK, Secretary,             )
United States Department of Agriculture, )
                                    )
            Defendant.              )
_____ )

OPINION AND ORDER

Plaintiff Rodney Bradshaw claims that the Farm Service Agency ("FSA") discriminated against him on the basis of race in connection with his efforts to obtain farm loans, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. The United States Department of Agriculture ("USDA") has filed a motion for summary judgment, which is now before the Court. Upon consideration of the arguments made by the parties in their papers and in open court, as well as the relevant legal authorities and the entire record in this case, the Court will grant in part and deny in part USDA's motion.[1]

---

[1] The papers considered in connection with the pending motion include: Mr. Bradshaw's Second Amended Complaint ("2d Am. Compl.") [Dkt. No. 133]; USDA's answer ("USDA Ans.") [Dkt. No. 132]; USDA's motion for summary judgment ("USDA MSJ") [Dkt. No. 150]; USDA's statement of facts ("USDA Stmt. of Facts") [Dkt. No. 153]; Mr. Bradshaw's opposition ("Pl.'s Opp.") [Dkt. No. 155]; Mr. Bradshaw's response to USDA's statement of facts ("Pl.'s Resp. Stmt. of Facts") and his own statement of facts ("Pl.'s Stmt. of Facts") [Dkt. No. 155-1]; USDA's reply ("USDA Reply") [Dkt. No. 159]; and USDA's reply to Mr. Bradshaw's response to USDA's statement of facts and his own statement of facts ("USDA Reply Stmt. of Facts") [Dkt. No. 159-1].

I.  BACKGROUND

Rodney Bradshaw is an African American man who has farmed in southwest Kansas since 1975.  He received a farm ownership loan in 1979 from the Farmers Home Administration, FSA's predecessor agency, which he used to purchase 80 acres of land.  Pl.'s Resp. Stmt. of Facts ¶ 1.  Mr. Bradshaw later received other loans from FSA in 1980, 1985, and 1996.  Id. ¶ 2.  By 2002, he and his wife Arzella were farming nearly 3,000 acres, on which they reared cattle and raised crops including wheat, milo, and sorghum.  Pl.'s Opp. at 1.  Mr. Bradshaw also was a Track A claimant in the Pigford class action, and in 1998 he ceased making payments on his FSA loans because he believed, based on the advice of counsel, that his participation in that lawsuit would include debt forgiveness.  Pl.'s Resp. Stmt. of Facts ¶ 3.  In June of 2002, based on Mr. Bradshaw's complaints to USDA about his treatment by FSA officials, his borrower file was transferred from FSA's office in Ness City, Kansas to its office in Oakley, Kansas.  Id. ¶ 4.  Since that transfer, his file has been handled by FSA Farm Loan Manager Dwight Jurey.  Id.

This case was initiated in 2004 and, due to difficulties arising from the behavior of Mr. Bradshaw's original counsel, Mr. James Myart, Jr., only now has reached the summary judgment stage.[2]  After Mr. Myart was terminated from the bar of this Court in 2008, Mr. Bradshaw proceeded *pro se* until April 2013, when this Court appointed attorneys from the law firm Hogan Lovells as *pro bono* counsel to represent him.  Bradshaw v. Vilsack, Civil Action No. 04-1422, 2013 WL 1716502 (D.D.C. Apr. 18, 2013).  The parties then engaged in discovery, and USDA subsequently filed the pending motion for summary judgment.

---

[2]  The troubled history of Mr. Myart's involvement in this case is more fully recounted in this Court's previous opinions.  See Bradshaw v. Vilsack, 286 F.R.D. 133 (D.D.C. 2012); Memorandum Opinion and Order (Dec. 22, 2005) [Dkt. No. 47].

2

Under this Court's Order of July 14, 2005 [Dkt. No. 36] and its Memorandum Opinion and Order of March 13, 2006 [Dkt. Nos. 48 & 49], the claims in this case are limited to the period from August 23, 2002 to May 2005. Pl.'s Opp. at 2; USDA MSJ at 11. Mr. Bradshaw asserts three specific claims.[3] First, he contends that he applied for an FSA loan in 2002 but ultimately never received that loan, and he maintains that he did not receive the loan because of his race. Second, Mr. Bradshaw asserts that in 2004 FSA discouraged him from applying for any more loans, also due to his race. Finally, Mr. Bradshaw alleges that in 2005 he was similarly discouraged with respect to his application for a real estate subordination loan. USDA has moved for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see FED. R. CIV. P. 56(a), (c). In making that determination, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A dispute over a material fact is "genuine" if

---

[3] In his opposition memorandum, Mr. Bradshaw makes arguments in support of a fourth claim relating to a loan application that he submitted in November 2005. See Pl.'s Opp. at 8-9, 28-29. But as USDA points out, see USDA Reply at 22-26, this claim post-dates the filing of Mr. Bradshaw's Second Amended Complaint. The Court therefore does not consider it.

3

it could lead a reasonable jury to return a verdict in favor of the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012). "[T]he moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." Barnett v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866; Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 255.

### III.  DISCUSSION

As noted above, Mr. Bradshaw advances three claims against USDA for discrimination in connection with:  (1) a loan application submitted in 2002, from which Mr. Bradshaw never received any funds; (2) alleged discouragement from applying for loans in 2004; and (3) alleged discouragement with respect to a 2005 real estate subordination loan application. The Court will address each of these claims in turn.

#### A.  *2002 Loan Application*

In November of 2002, Mr. Bradshaw submitted a request to FSA seeking loan assistance. The application was deemed complete on February 14, 2003. Pl.'s Opp., Ex. 11. By letter of March 12, 2003, FSA Farm Loan Manager Dwight Jurey informed Mr. Bradshaw that

his "cash flow" was negative, meaning that Jurey's analysis of Bradshaw's finances showed that Bradshaw could not be approved for a loan. See Pl.'s Opp., Ex. 8. One week later, Jurey sent Bradshaw another letter that again indicated a cash flow that was negative, albeit by a lesser amount than had been previously estimated. See Pl.'s Opp., Ex. 9. On April 10, Mr. Jurey sent Mr. Bradshaw a third letter in which Jurey communicated that the loan request had been denied due to Bradshaw's negative cash flow. See Pl.'s Opp., Ex. 19. Mr. Jurey also stated, however, that "I will continue to work with you and your other lenders with the goal of putting together a feasible financing package," and that "[w]hen information is received which supports approval of your request, I intend to withdraw [the loan denial]." Id. Just a week later, Mr. Jurey sent yet another letter to Mr. Bradshaw, and in this letter Jurey informed Bradshaw that if certain loans were restructured the resulting cash flow would be positive. See Pl.'s Opp., Ex. 10. Mr. Jurey's letter further stated that in order to move forward with the loan, Mr. Bradshaw and his wife would have to sign and return a Farm & Home Plan document that Jurey had enclosed with the letter, in addition to providing a copy of their 2002 tax return. Id.

In mid-May of 2003, Mr. Bradshaw made an inquiry regarding the date by which he would have to submit the necessary documentation. Declaration of Dwight A. Jurey (Apr. 8, 2014) ("Jurey Decl.") [Dkt. No. 150-12] ¶ 123; Pl.'s Resp. Stmt. of Facts ¶ 37. Beyond that point in time, however, the facts are disputed. Mr. Jurey states that he never received any further communication from Mr. Bradshaw regarding the loan application, and, in particular, Jurey asserts that he never received the required paperwork. Jurey Decl. ¶¶ 129-31. Mr. Jurey closed the file on the application on October 16, 2003, purportedly due to Bradshaw's failure to follow up regarding it. Id. ¶ 131. It is undisputed that Mr. Bradshaw never saw any funds as a result of the application. But Mr. Bradshaw has testified that he recalls signing and mailing to Mr. Jurey a

copy of the Farm & Home Plan and a copy of his 2002 tax return.  See Deposition of Rodney Bradshaw (Jan. 23, 2014) ("Bradshaw Depo.") [Pl.'s Opp., Ex. 3] at 175:22-176:17, 177:2-13. Mr. Bradshaw therefore argues that there is a genuine issue of material fact regarding whether he submitted these forms, and he contends that this dispute precludes a grant of summary judgment in USDA's favor.  See Pl.'s Opp. at 2-4, 12.

The twin centerpieces of Mr. Bradshaw's claim, therefore, are that FSA denied him the funds for which he had applied on account of his race, and that Mr. Jurey's contention that the paperwork never was received is not true and is a mere pretext for discrimination.[4]  As noted, Mr. Jurey maintains that he closed the file on Mr. Bradshaw's application because Bradshaw never submitted the required paperwork, did not call or write saying he intended to do so, and did not otherwise follow up regarding the loan.  But Mr. Bradshaw contests the veracity of this narrative, and if his testimony were credited by a jury over the contrary evidence proffered by USDA, the jury could find that Mr. Bradshaw did in fact mail the paperwork, and thus infer that Mr. Jurey received it and refused to process the application for some other reason. Although it appears highly unlikely that Mr. Bradshaw could persuade a jury to find in his favor on this claim given the evidence in the record, granting summary judgment to USDA nonetheless would be inappropriate.  See Tolan v. Cotton, 134 S. Ct. at 1866 (in deciding a motion for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party'") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)); Barnett v. PA Consulting Group, Inc., 715 F.3d at 358 ("Credibility determinations, the weighing of the

---

[4] Mr. Bradshaw also complains about the fact that his loan application was formally denied by FSA on April 10, 2003.  See Pl.'s Opp. at 3-4, 17-19, 21, 23-24.  The Court agrees with USDA that no viable claims may rest on any complaint related to the April 10 denial letter, which was effectively rescinded on April 18 when Mr. Jurey informed Mr. Bradshaw that a positive cash flow was feasible and that the loan application therefore could advance.

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment."); Holmes-Martin v. Sebelius, 693 F. Supp. 2d 141, 156 (D.D.C. 2010) ("Although the court does not consider [the plaintiff's] independent evidence of racial animus particularly persuasive, the court's role at this stage is not to weigh the evidence but simply to determine whether there exists a genuine issue of material fact.") (footnote omitted).[5]

The existence of a genuine issue of fact concerning whether Mr. Bradshaw submitted the paperwork does not end the matter, however, as he still must point to evidence in the record from which a jury could find that his non-receipt of the loan was the result of racial discrimination. Drawing all reasonable inferences in Mr. Bradshaw's favor on USDA's motion for summary judgment, the Court concludes that Bradshaw's identification of white farmers in the same locality who received FSA loans during the same time period satisfies this burden. See Pl.'s Opp. at 21-22. Assuming that Mr. Bradshaw mailed the necessary documents to Mr. Jurey, at least some of those white farmers are comparable to Bradshaw, as they applied for loans, saw their applications processed to completion, and received the funds. USDA contends that these farmers "do not provide any meaningful contrast" to Mr. Bradshaw because "[t]he only difference [between them and Bradshaw] was that FSA had reason to know they were pursuing their applications, whereas Mr. Jurey had no reason to know that plaintiff still was pursuing his

---

[5] USDA invokes the common law rule providing that "proof that a letter has been properly addressed, stamped, and deposited in the mail gives rise to a rebuttable presumption that the letter was delivered in a timely fashion to its intended recipient." Duckworth v. U.S. ex rel. Locke, 705 F. Supp. 2d 30, 42 (D.D.C. 2010); see USDA Reply at 9-10 & n.9. According to USDA, Mr. Bradshaw's deposition testimony does not meet the standard to raise the presumption and, even if it did, "[USDA] has put forward evidence to rebut any presumption of delivery." USDA Reply at 9 n.9. But USDA misses the point. Although Bradshaw cannot enjoy the benefit of the presumption of mailing, this does not mean that he has failed to raise a genuine issue of material fact regarding whether he mailed the documents, and USDA's evidence concerning its non-receipt of the documents does not conclusively resolve the factual issue in its favor at the summary judgment stage. The issue is for the jury.

application." USDA Reply at 15. But this is the very factual issue that Mr. Bradshaw contests: whether he mailed the application and it was received.

Of course, as noted already, Mr. Bradshaw faces a formidable challenge in persuading a jury that Dwight Jurey has lied about not receiving Bradshaw's paperwork as a means of cloaking racial discrimination. This is particularly so given the evidence that Jurey appears to have worked diligently over several years to shepherd a number of Mr. Bradshaw's loan applications through the process. But "a party moving for summary judgment is not entitled to a judgment merely . . . because it appears that the adversary is unlikely to prevail at trial." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. AND PROC. CIV. § 2725, at 432 (3d ed. 1998). Given the genuine factual dispute concerning whether Mr. Bradshaw mailed the Farm & Home Plan and his tax return to Mr. Jurey, along with the fact that white farmers did receive FSA loans, the Court cannot grant judgment to USDA on this claim.

### B. 2004 Discouragement from Applying for Loans

Mr. Bradshaw contends that in 2004 Mr. Jurey "discouraged" him from applying for a loan, and that, due to this discouragement, Mr. Bradshaw was unable to submit a winning bid on a piece of land that was up for auction. See Pl.'s Opp. at 26-27. In his deposition, Mr. Bradshaw testified that Mr. Jurey told him he was "not going to do anything with" Bradshaw's loan applications, and that he "wasn't going to process them," because in Jurey's opinion Bradshaw was "delinquent on [his] loans." Bradshaw Depo. at 246:5-10; see also id. at 244:15-245:11, 249:21-250:9. USDA responds that even if Mr. Jurey made these alleged statements to Mr. Bradshaw, they would not rise to the level of discriminatory discouragement. Specifically, USDA maintains that Jurey was simply informing Bradshaw that due to his delinquency on existing farm loans, he could not be approved for any other loans. See USDA

8

MSJ at 28.  In addition, USDA argues that no reasonable jury could construe Jurey's purported statements as constituting unlawful discouragement in light of ample evidence in the record indicating that Mr. Jurey worked diligently and fairly to assist Mr. Bradshaw over a number of years with respect to several loan applications.  See id.

        As USDA conceded at oral argument, discouragement may provide the basis for a claim of discrimination brought under the Equal Credit Opportunity Act.  But in this case, the Court agrees with USDA that no reasonable jury could find in Mr. Bradshaw's favor on this claim.  The only specific injury that Mr. Bradshaw identifies as having resulted from the alleged discouragement in 2004 was his loss on a bid for a 160-acre piece of land sold at auction.  See Pl.'s Opp. at 26-27.  Mr. Bradshaw's deposition testimony, however, indicates that he recalls having submitted a 2004 farm ownership loan application in relation to that property, which ultimately was not approved.  See Bradshaw Depo. at 221:17-223:19, 226:10-228:10.  Consequently, the injury that Mr. Bradshaw alleges — an inability to offer a winning bid on the land due to his having been discouraged from applying for a loan — is illusory, given that according to his own recollection he *did* apply for the loan.

        Moreover, a reasonable jury would be unable to find that Mr. Jurey's alleged statements to Mr. Bradshaw represent anything other than candid assessments of Bradshaw's eligibility for a loan.  Mr. Bradshaw does not contest the accuracy of Jurey's assertion that Bradshaw was at that time delinquent and therefore ineligible for the type of loan for which he had an interest in applying.  See Pl.'s Opp. at 26-27.  To be sure, FSA regulations require FSA officials to provide a loan application to any person who requests one, and Mr. Jurey testified that he always followed this rule.  See Deposition of Dwight A. Jurey (Oct. 30, 2013) [Dkt. No. 155-3] at 14:16-15:13.  But the regulations do not preclude a loan manager who is familiar with

9

an applicant's financial situation from speaking unreservedly about that applicant's prospects of receiving the loan sought. The statements attributed to Mr. Jurey in connection with Mr. Bradshaw's 2004 loan inquiries are precisely this sort of appraisal. For the foregoing reasons, the Court will grant judgment to USDA on this claim.

### C. 2005 Discouragement with Respect to Real Estate Subordination Application

Mr. Bradshaw's final claim relates to an application that he submitted to FSA on March 10, 2005, seeking a real estate subordination to enable him to obtain a loan from a private creditor using collateral for which FSA otherwise would have retained priority. See Pl.'s Resp. Stmt. of Facts ¶¶ 61-62. There is no dispute that this application was approved and that, as a result, Mr. Bradshaw was able to receive the private loan. See id. ¶ 66. Nonetheless, Bradshaw asserts that at some point in the process, "Mr. Jurey told me that my loan had been denied and that I would be denied loan servicing for the rest of the year." Declaration of Rodney Bradshaw [Dkt. No. 155-3] ¶ 12. Mr. Bradshaw argues that he "was left in a state of confusion about whether this loan had been approved and whether he would receive future loans from FSA." Pl.'s Opp. at 7-8; id. at 12 ("[P]laintiff has raised genuine issues regarding . . . whether FSA gave him mixed signals regarding 2005 loan applications."); see also id. at 27-28.

Although it certainly is conceivable that providing misleading information, or perhaps even "mixed signals," could be employed as a tool of discrimination, there is absolutely no basis in the record for finding that Mr. Jurey did so with respect to Mr. Bradshaw's March 2005 subordination application. Even assuming the truth of Bradshaw's contention that Jurey told him his loan had been denied when, in fact, it was approved, Mr. Bradshaw can point to no evidence to support a finding that this incident reflected anything other than a mistake on Mr.

10

Jurey's part.  And the fact is that the loan was approved and Bradshaw received the subordination, as well as an additional $30,000 operating loan from FSA that had been incorporated into Mr. Bradshaw's loan application during the processing period.  See Pl.'s Resp. Stmt. of Facts ¶¶ 66-68.

Mr. Bradshaw cites an email exchange between Jurey and another FSA official that occurred in early March of 2005, in which they discussed a plan — ultimately never implemented — to automatically send Bradshaw's loan applications to mediation rather than make an effort to work up a feasible cash flow plan for them.  See Pl.'s Opp. at 29.  Bradshaw also contends that when determining whether to approve a white farmer's loan application, Mr. Jurey took into account prospective future income, whereas Jurey supposedly declined to do so for Mr. Bradshaw.  See id. at 27-29.  These asserted facts lend no support to Bradshaw's contention that Mr. Jurey intentionally misled him about the approval status of a loan that ultimately was approved.  The Court therefore will grant judgment to USDA on this claim.

IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the motion for summary judgment filed by the United States Department of Agriculture [Dkt. No. 150] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that USDA's motion is granted with respect to Mr. Bradshaw's claims relating to alleged discouragement in 2004 and 2005; it is

FURTHER ORDERED that USDA's motion is denied with respect to Mr. Bradshaw's claim relating to his non-receipt of a loan in 2003, for which he originally applied in 2002; and it is

FURTHER ORDERED that on or before May 22, 2015, the parties shall file in writing a joint status report indicating their respective views on how this case should proceed, including whether the parties request referral to the United States District Court Mediation Program, which is administered by the Office of the Circuit Executive, see LOC. CIV. R. 84.4, or whether they wish to pursue settlement discussions with the aid of a magistrate judge.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: May 5, 2015